**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **BILLIE CALLAHAN,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**PORTFOLIO RECOVERY ASSOCIATES LLC and ABC LEGAL SERVICES LLC**<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:26-cv-00382-TES** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT PORTFOLIO RECOVERY ASSOCIATES LLC'S MOTION TO DISMISS**

Plaintiff Billie Callahan alleges that Defendants—Portfolio Recovery Associates, LLC ("PRA") and ABC Legal Services, LLC ("ABC Legal")—violated two statutes: the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, (the "FDCPA") and Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.* (the "FBPA"). [Doc. 1]. She filed her complaint on September 1, 2026. [*Id.*].

Defendant PRA moved to dismiss Plaintiff's complaint on October 8, 2026, pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 8].[1] PRA asks the Court to dismiss Plaintiff's complaint with prejudice. [*Id.*]. Plaintiff responded on October 13,

[1] On October 5, 2026, Court granted an unopposed motion for extension of time to answer; PRA's deadline to file a responsive pleading was October 8, 2026. [Doc. 7].

2026. [Doc. 9]. Defendant PRA filed its reply to Plaintiff's response on October 27, 2026. [Doc. 10]. This Court now rules on Defendant PRA's motion to dismiss the complaint.

**<u>BACKGROUND</u>**

According to Plaintiff's complaint, she held a Best Buy-branded credit card account issued by Citibank, N.A., ending in 5213. [Doc. 1 at ¶ 18]. Citibank "charged off the account and assigned or sold it to Defendant PRA for collection." [*Id.* at ¶ 19]. Plaintiff alleges that this account arose from a transaction incurred "primarily for personal, family, or household purposes," and that it is a "debt" as defined by 15 U.S.C. § 1692a(5). [*Id.* at ¶ 20].

Based on this account, Defendant PRA filed a verified Statement of Claim against Plaintiff in the Magistrate Court of Crawford County, Georgia, seeking $2,137.81. [*Id.* at ¶ 21]. PRA filed this Statement on July 17, 2025. [*Id.*]. Next, on July 23, 2025, Plaintiff alleges that she paid PRA to settle the account in full by paying an amount of $1,496.47. [*Id.* at ¶ 22]. She alleges that PRA accepted and retained payment. [*Id.* at ¶ 23].

Jumping forward about a year, Plaintiff claims she was served with PRA's Statement on May 29, 2026: a little less than a year after it allegedly accepted his payment to settle the account. [*Id.* at ¶ 26]. PRA, therefore, did not dismiss the lawsuit it had filed just days before accepting Plaintiff's payment, and the case remained pending, unserved, for about ten months. [*Id.* at ¶¶ 24–26]. Defendant ABC Legal served as

PRA's "litigation-support vendor" responsible for service of process and case administration of the state court case. [*Id.* at ¶ 39].

Plaintiff filed an answer to PRA's Statement pro se on June 10, 2026, allegedly denying any amount was owed and attaching proof of payment. [*Id.* at ¶ 27]. Plaintiff claims she called PRA on multiple occasions asking that the suit be dismissed given the settlement already paid, but, on each occasion, PRA's legal representatives told Plaintiff that its "legal department was closed" or "otherwise refused to address her concerns or explain why the case had not been dismissed." [*Id.* at ¶ 30]. Plaintiff was "informed by the Court" that Defendant ABC Legal, PRA's "litigation-support vendor," was responsible for finalizing any dismissal. [*Id.* at ¶ 31]. On July 14, 2026, neither PRA nor ABC Legal appeared at a hearing in the state court litigation; the state court case was dismissed without prejudice for failure to appear. [*Id.* at ¶¶ 32–34].

Plaintiff also claims there were several deficiencies with the Statement of Claim itself, not just the litigation process. While PRA's Statement lists five attorneys, the attorneys' verification signature is illegible and nothing in the Statement identified which attorneys (if any) actually reviewed his account before filing the Statement, possessed knowledge of the facts sworn to, or appeared before the notary who purportedly administered the oath. [*Id.* at ¶¶ 35–36]. Plaintiff alleges, based on this lack of clarity, that the Statement of Claim was mass produced without actual attorney

review of his account, therefore rendering the Statement's representation that there was attorney review false. [*Id.* at ¶ 38].

Plaintiff alleges that Defendants' conduct "invaded Plaintiff's legal rights, namely her right to be free from attempts to collect debts or amounts she does not owe, her right to be given accurate information about a debt, and her right to be treated fairly and with conscious regard." [*Id.* at ¶ 41]. She alleges that these invasions of her rights caused her suffering, stress, anxiety, emotional distress, and "valuable lost time and resources." [*Id.*]. Based on these violations, Plaintiff alleges that Defendants' conduct violated the federal FDCPA and Georgia's FBPA.

Plaintiff alleges Defendants violated the FDCPA in Count I. As defined by the FDCPA, she alleges that she is a "consumer," that her account is a "debt," that Defendants are both "debt collector[s]," and that PRA's Statement of Claim and its representatives' communications to Plaintiff are "communications." [*Id.* at ¶¶ 42–45]. Specifically, she alleges that Defendants violated the following subsections of the FDCPA: 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(3), 1692e(5), 1692e(10), 1692f, and 1692f(1). [*Id.* at ¶¶ 46–49]. As a result of these violations, Plaintiff alleges she is entitled to 15 U.S.C. § 1692k(a)(1) actual damages, 15 U.S.C. § 1692k(a)(2)(A) statutory damages, and 15 U.S.C. § 1692k(a)(3) reasonable attorneys' fees and costs. [*Id.* at ¶ 50].

Plaintiff further alleges that Defendants violated the FBPA in Count II. As defined by the FBPA, Plaintiff claims that she is a "consumer" and that a "consumer

transaction" occurred when Plaintiff's account was "placed with, obtained by, or assigned to Defendants for collection," where the collection of debt related to consumer transactions is also a "consumer transaction." [*Id.* at ¶ 52]. She claims that PRA and ABC Legal both violated the FBPA by "intentionally and willfully" "violating the FDCPA." [*Id.* at ¶¶ 54–56]. As a result, she claims she is entitled to the trebling of any actual or statutory damages sustained as a result of Defendants' intentional or willful violations of the FBPA and reasonable attorneys' fees and costs. [*Id.* at ¶ 57]. In Count IV,[2] Plaintiff further alleges that she has a statutory right to punitive damages under the FBPA. [*Id.* at ¶¶ 58–60].

## LEGAL STANDARD

Defendant PRA seeks to dismiss Plaintiff's action against it for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). To decide whether a complaint survives a motion to dismiss, district courts are instructed to first to disregard mere conclusory allegations

[2] Plaintiff's complaint is mislabeled. There is no Count III; her third count is instead titled Count IV. For the sake of clarity, this Court uses Plaintiff's choice in title.

and then to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). So, notwithstanding Plaintiff's allegations, a claim may be dismissed pursuant to Rule 12(b)(6) when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Barrett v. U.S.*, 369 Fed. App'x 65, 66 (11th Cir. 2010) (per curiam) (quoting *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam)); *see also Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)) ("A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred.'").

With the foregoing standard in mind, and taking the facts asserted in Plaintiff's Complaint as true, the Court rules on Defendant PRA's Motion to Dismiss.

## DISCUSSION

Defendant PRA argues that Plaintiff's complaint should be dismissed for failure to state a claim pursuant to 12(b)(6) for four reasons: two pertaining to her federal

FDCPA claims, and two to her Georgia state law FBPA claims. [Doc. 8]. First, PRA argues that Plaintiff's federal FDCPA claims concerning the July 17, 2025, Statement of Claim are procedurally barred, because Plaintiff didn't file them until after the applicable statute of limitations period had already expired. [*Id.*, pp. 8–10]. Second, PRA argues that all of Plaintiff's FDCPA claims fail as a matter of law because what Plaintiff alleges are "communications" under meaning of the statute are not, in fact, "communications." [*Id.*, pp. 6–8]. Third, PRA argues that Plaintiff's Georgia FBPA claims fail as a matter of law because they are preempted by Georgia's Abusive Litigation Statute, O.C.G.A. § 51-7-80 *et seq*. (the "ALS"), which PRA claims provides the exclusive remedy under Georgia law for alleged wrongs that occur during civil litigation. [*Id.*, pp. 10–12]. Fourth and finally, PRA argues that Plaintiff's Georgia FBPA claims are barred as a matter of law because the act of litigating a case through legal services in order to collect a debt is exempt from the FBPA's statutory provisions on their own terms. [*Id.*, pp. 12–15].

### A. <u>The Federal FDCPA Claims</u>

First, PRA contends that Plaintiff fails to state a claim under the FDCPA in Count I. To do so, it makes two arguments: a procedural argument concerning the statute of limitations, and a substantive argument concerning the definition of "communications." It is best to start by addressing the procedural argument.

**1. Section 1692k(d) Statute of Limitations**

Plaintiff's FDCPA claims relating to the filing of the Statement of Claim and anything prior to it are barred under the FDCPA's statute of limitations. However, Plaintiff's FDCPA claims relating to events that occurred within the statute of limitations period—so, on or after September 1, 2025—are not barred. Thus, Plaintiff does not procedurally fail to state a claim regarding every claim in Count I.

Section 1692k(d) of the FDCPA states that "[a]n action to enforce any liability created by this subchapter may be brought . . . *within one year* from the date on which *the violation occurs*." 15 U.S.C. § 1692k(d) (emphasis added). This date is calculated as one year from the date of the alleged violation of the FDCPA. *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019). The Supreme Court has clearly and expressly rejected the idea that this statute of limitations period runs from date of Plaintiff's *discovery* of the violation, such as when Plaintiff was first served. *Id.* ("[The statute's] language unambiguously sets the date of the violation as the event that starts the one-year limitations period. . . . The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened.").

Here, Plaintiff filed her complaint in this Court on September 1, 2026. [Doc. 1].

One year prior to September 1, 2026, is—naturally—September 1, 2025.[3] The Statement of Claim that she alleges is one of PRA's "communications" violating the FDCPA was, meanwhile, filed in the Magistrate Court of Crawford County, Georgia on July 17, 2025: well before September of that year. [Doc. 1 at ¶ 21]. Thus, an FDCPA claim relying on the *filing* of the Statement of Claim itself is plainly barred by the relevant statute of limitations.

Plaintiff, however, does not claim that the actionable misconduct is limited to only the filing of the Statement of Claim itself (although he does identify the Statement, alongside other communications, as a communication or action for collection of the debt). [Doc. 1 at ¶ 45]. Rather, Plaintiff claims that PRA's *continued prosecution* of the collection action after accepting and retaining the July 23, 2025, settlement payment is *also* actionable misconduct. [*Id.* at ¶¶ 46–49].

Plaintiff's actual factual allegations include many potential communications or actions that occurred within the statute of limitations period. On May 29, 2026, around ten months after PRA accepted Plaintiff's "full settlement" of the account balance in question, it served Plaintiff with the Statement of Claim demanding $2,137.81. [*Id.* at ¶¶

[3] Where a federal statute does not provide its own method of computation, as in the FDCPA's case, federal time computation rules govern statutes of limitation. *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995). Federal time computation rules provide that computation should "exclude the day of the event that triggers the period," "count every day, including intermediate Saturdays, Sundays, and legal holidays," and "include the last day of the period," unless the last day is a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1). Here, September 1, 2026, was a Tuesday and not a holiday. So, excluding the triggering day and including the last day of the one-year statute of limitations period, one year prior to the date Plaintiff filed her complaint was September 1, 2025.

25–26]. After the Statement was served (so well within the statute of limitations) Plaintiff called PRA's representatives asking the suit be dismissed, only to be told the "legal department was closed." [*Id.* at ¶ 30]. Then, PRA did not show for the hearing it itself had noticed and the case was dismissed for failure to prosecute. [*Id.* at ¶¶ 33–34]. All this alleged conduct—the service, the continued prosecution, the discussions with PRA's representatives—took place after May 29, 2026, and therefore well within the one-year statute of limitations period. So, much of the period of alleged prosecution is within the statute of limitations period.

While PRA argues that the period of alleged prosecution "would only have been accomplished through the filing of the Statement of Claim," [Doc. 8, p. 9], mere association with an event that occurred outside the statute of limitations period is not enough to bar actions and communications made during that period under the statute of limitations. After all, Plaintiff doesn't even contend that the actual filing of the Statement of Claim itself was wrongful when suit was first filed—merely that it became wrongful through PRA's continued prosecution after it accepted a settlement payment.

On the other hand, Plaintiff alleges some potential actions or communications that must have occurred outside the statute of limitations period: before September 1, 2025. The Statement of Claim itself *was* filed on July 17, 2025. [Doc. 1 at ¶ 21]. And some of Plaintiff's FDCPA violation claims center the filing of the Statement itself or facts surrounding its filing, like the "single, illegible signature" included within it, swearing

to its contents under oath, [*Id.* at ¶¶ 35–36], or the alleged mass-production and verification of the Statement without attorney review. [*Id.* at ¶ 38].

Thus, to the degree that Plaintiff's claims for violation of the FDCPA in Count I are based on the filing and signing of the Statement of Claim, or any other event that occurred outside the statute of limitations period, those claims are barred by the FDCPA's statute of limitations. However, the remainder of those claims concerning the continued prosecution of the Statement of Claim within the statute of limitations period are not barred by the FDCPA's statute of limitations.

**2. "Communications" Under the FDCPA**

In addition to its procedural arguments, Defendant PRA argues that Plaintiff's FDCPA claims—as a whole—substantively fail as a matter of law, because neither the Statement of Claim nor the "communications between parties and actions occurring within the bounds of the state-court action" constitute "communications" under the meaning of the FDCPA. [Doc. 8, p. 6]. PRA overstates its argument.

To establish a claim under the FDCPA, Plaintiff does not need to show that the alleged conduct is a "communication." Instead, "Plaintiff must show that the Defendant is a debt collector and that it engaged in some act prohibited by the FDCPA, or failed to disclose information required by the FDCPA, in attempting to collect from Plaintiff on her consumer debt." *Purser v. Weinstock & Scavo, P.C.*, No. 1:08-CV-2466-CAP-CCH, 2008 WL 11443084 at *7 (N.D. Ga. Nov. 6, 2008), *report and recommendation adopted*, No.

1:08-CV-2466-CAP, 2009 WL 10707838 (N.D. Ga. Jan. 8, 2009), *aff'd*, 325 F. App'x 902 (11th Cir. 2009).

A "debt collector" means:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). This definition of "debt collector" includes lawyers who regularly act to collect debts. *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). A "communication" is the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Where the FDCPA demands a "communication" must have been had, the 11th Circuit has clarified that this definition generally excludes either a "legal action or pleading" or communications made by parties' legal representatives during a lawsuit. *Vega v. McKay*, 351 F.3d 1334, 1337 (11th Cir. 2003) ("[T]he term 'communication' as used [in the FDCPA] does not include a 'legal action' or pleadings or orders connected therewith. . . . [A] legal action does not constitute an 'initial communication' within the meaning of the FDCPA[] . . . ."); *Bruce v. U.S. Bank Nat'l Ass'n*, 770 F. App'x 960, 965 n.6 (11th Cir. 2019); *Purser*, 2008 WL 11443084 at *12.

However, while many FDCPA rules govern communications, the FDCPA does not *require* that conduct be a communication to be proscribed. Instead, a wide range of conduct that may or may not include a defined "communication" may be grounds for an FDCPA violation, such as specific forms of unfair, deceptive, or abusive conduct. *See*

*generally* 15 U.S.C. §§ 1692d–1692f. Indeed, even though legal actions and pleadings are not generally FDCPA "communications," the FDCPA does apply to debt-collector lawyers engaged in litigation, both because it applies to anyone who regularly tries to obtain payment of consumer debts through legal proceedings and because Congress explicitly removed the FDCPA's attorney exemption. *Heintz*, 514 U.S. at 294; *see also Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1295 (11th Cir. 2015) ("[W]e find that . . . the FDCPA applies to attorneys . . . who regularly engage in debt collection activity, even when that activity includes litigation and even when the attorneys' conduct is directed at someone other than the consumer.").

Here, Plaintiff brings claims under 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(3), 1692e(5), 1692e(10), 1692(f), and 1692f(1). [Doc. 1 at ¶¶ 46–49]. Of these, only Plaintiff's claim under § 1692e(3) requires the presence of an underlying communication. That subsection forbids "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). Because Plaintiff alleges that both Defendants violated § 1692e(3) by including a cursory signature on the Statement of Claim that—allegedly—falsely represented that the Statement was from a group of five attorneys, Plaintiff's § 1692e(3) claim requires the Statement to be a communication as defined in § 1692a(2).

To make these FDCPA claims, Plaintiff alleges both communication and non-communication conduct. She claims that "PRA's Statement of Claim, and its

representatives' communications to Plaintiff . . . , are 'communications' as that term is defined by 15 U.S.C. § 1692a(2), and/or actions taken in connection with the collection of a debt." [Doc. 1 at ¶ 45]. However, every communication alleged by Plaintiff was made by legal representatives during a lawsuit within the bounds of a legal action—including the Statement of Claim itself. Therefore, those alleged communications are not communications under the FDCPA, and the § 1692e(3) claim substantively fails.

Thus, while Plaintiff substantively fails to state a claim under the § 1692e(3) of the FDCPA, she does not substantively fail to state a claim under the FDCPA for the remaining claims of Count I.

**B. <u>The Georgia FBPA Claims</u>**

PRA also alleges that Plaintiff failed to state a claim under Georgia's FBPA in Counts II and IV. In so doing, PRA makes two arguments: that the FBPA claim is preempted by another statute, the ALS, and that litigation activity as a whole is exempted from the FBPA. Although Plaintiff's claims are not preempted by the ALS, litigation activity, including the conduct at issue, is exempted from the FBPA.

**1. Preemption Under the Abusive Litigation Statute**

PRA argues that Georgia's Abusive Litigation Statute, O.C.G.A. § 51-7-80 *et seq.*, is the exclusive remedy for any and all alleged wrongs that occur during the course of civil litigation. [Doc. 8, p. 10]. It is not. Instead, it's the "exclusive remedy for abusive litigation." O.C.G.A. § 51-7-85.

The Abusive Litigation Statute provides for a statutory cause of action that replaced several distinct actions at common law: malicious use of process, claims under an old case called *Yost v. Torok*, and malicious abuse of process. *Hallman v. Emory Univ.*, 483 S.E.2d 362, 364–65 (Ga. Ct. App. 1997). This cause of action is a distinct, "independent cause of action . . . ." *Id.* at 365. A cause of action for abusive litigation arises when "any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another" if that person acts both with malice and without substantial justification. O.C.G.A. § 51-7-81.

Here, PRA characterizes Plaintiff's Count II as a statutory abusive litigation claim in disguise, which would therefore be subject exclusively to the Abusive Litigation Statute. It is not. The facts alleged in Count II instead center around the act of consumer debt collection, undertaken *through* litigation, not abuse of the litigation process itself.

Plaintiff alleges a multitude of unfair business practices committed against her, an alleged consumer: attempted collection of a debt after acceptance of payment in full settlement, failure to correct the amount and legal status of the account in question, and continuing of debt-collection conduct after receiving proof of payment. [Doc. 1]. Plaintiff also alleges conduct outside of the original filing of the Statement of Claim, including communications with PRA after receipt of service. [*Id.*]. Granted, this alleged conduct occurred within the scope of litigation. However, these specific allegations are

more precisely about PRA's debt collection conduct, not about the abuse of the litigation process itself.

Thus, because Plaintiff's current claims do not fall under the statutory cause of action for abusive litigation, Georgia's ALS is not the exclusive remedy for Plaintiff's alleged harms. Plaintiff's state law claims under the FBPA are not precluded by the ALS, and she does not fail to state a claim for failure to allege under the ALS.

**2. Exemption of Litigation from the FBPA**

PRA also argues that Plaintiff's FBPA claims are barred as a matter of law because "the act of litigating a case" through "legal services" to collect a debt is exempted from the provisions of the FBPA. [Doc. 8, p. 12]. Here, PRA is correct.

Under Georgia law, the FBPA is intended to "have a restricted application only to the unregulated consumer marketplace" such that the FBPA should "not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise." *Schlesinger v. Eaton Corp.*, No. 2:23-cv-157-RWS, 2025 WL 3567281, at *7 (N.D. Ga. July 9, 2025) (quoting *Gen. Assembly Chancellor v. Gateway Lincoln-Mercury, Inc.*, 502 S.E.2d 799, 805 (1998)). Meanwhile, the practice of law is a highly regulated marketplace under Georgia law; oversight is extensive. *State ex rel. Doyle v. Frederick J. Hanna & Assocs., P.C.*, 695 S.E.2d 612, 615 (2010). In fact, "the representation of clients by a law firm does not come within the FBPA even if certain services were provided by non-lawyers within the firm

and could have been offered by a company without any attorneys." *Id.* This is because of the legal nature of the activity, the practice of law, not because of the legal nature of the firm itself. *See, e.g.*, *id.* (drawing a contrast between the "entrepreneurial or commercial aspects of the [legal] profession" and the "noncommercial aspects of lawyering—that is, the representation of the client in a legal capacity" rather than a contrast between a corporation's in-house lawyers and attorneys who work in a firm).

So, the Supreme Court of Georgia has made clear that the act of representing a client in a legal capacity is excluded from the scope of the FBPA, at least in the law firm context. *Id.* Like comparable statutes in other jurisdictions, Georgia's FBPA

> contains no language expressly excluding or including the legal profession with its ambit. Despite the absence of such language, there appears to be little dispute among the decisions addressing this issue that consumer protection statutes do not apply to claims arising out of the "*actual practice of law*."

*Id.* at 614 (Ga. 2010) (emphasis added) (quoting *Cripe v. Leiter*, 703 N.E.2d 100, 105 (Ill. 1998). "[O]nly the entrepreneurial aspects of the *practice* of law are covered by [Georgia's FBPA] . . . . 'The noncommercial aspects of lawyering — that is, the representation of the client in a legal capacity — should be excluded for public policy reasons.'" *Id.* at 615 (internal citations removed) (quoting *Haynes v. Yale-New Haven Hosp.*, 699 A.2d 964, 972–73 (Conn. 1997)).

And, although courts have found FBPA liability based on debt collection misconduct, *see generally, eg.*, *1st Nationwide Collection Agency, Inc. v. Werner*, 654 S.E.2d

428 (Ga. Ct. App. 2007); *Gilmore v. Acct. Mgmt., Inc.*, 357 Fed. App'x 218 (11th Cir. 2009), liability in those cases rested not on courtroom litigation acts but rather on commercial conduct: for example, harassment, threats of *future* litigation, and continued reporting of an alleged debt *after* the suit to collect that debt was dismissed on the merits. *1st Nationwide Collection Agency, Inc.*, 654 S.E.2d at 431–32; *Gilmore*, 357 Fed. App'x at 219 n.1. While the Eleventh Circuit has noted that a violation of the FDCPA could mean that the FBPA was "necessarily violated," *Gilmore*, 357 Fed. App'x at 220–221, to hold too closely to the strong link between the two laws would ignore the special carveouts that Georgia has created for the FBPA that do not apply to the FDCPA. Although a collection agency's commission of deceptive commercial acts (like false credit reporting or deceptive notices) during a lawsuit are actionable under the FBPA, the actual litigation conduct itself (filing and prosecuting of a Statement of Claim or failing to appear in court) is instead regulated as the practice of law. *State ex rel. Doyle*, 695 S.E.2d at 615. So, while debt collection litigation is governed by the federal FDCPA, and while the ALS doesn't itself preclude a claim under the FBPA, Georgia's FBPA still stops at the courthouse doors.

This Court finds no reason to arbitrarily find an exception for attorneys' practice of law while working for a company other than a law firm. The Georgia Supreme Court's focus is on whether the practice of law and robust representation of client interests are influenced by applying the FBPA, not whether a law firm's operation is

affected. Whether performed in a corporation or in a law firm, the practice of law remains heavily regulated in Georgia such as to place the legal field outside the purview of the FBPA.

Here, the conduct at issue in the FBPA claims is entirely litigation-based. First, PRA filed in state court. Then, it continued to prosecute its claim until the claim was dismissed without prejudice. When making these litigation decisions, Defendants acted through legal counsel in the practice of law. Plaintiff's allegations fall solely within the legal action; she does not allege that PRA engaged in wrongful commercial conduct apart from its attorneys' litigation conduct.

Thus, because the practice of law is an independently regulated field outside the purview of the FBPA, and because the actions attributed to Defendants—including PRA—constitute the practice of law, Plaintiff fails to state a claim under the FBPA in Counts II and IV of her complaint.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's motion to dismiss in part. Accordingly, the Court **DISMISSES** Counts II and IV of Plaintiff's complaint and **DISMISSES** all claims in Count I of Plaintiff's complaint that (a) rely on the filing of the Statement of Claim, which occurred outside the statute of limitations period and is therefore time-barred, or (b) rely on the assertion that legal representatives' communications within a lawsuit's bounds are "communications" as

defined in 15 U.S.C. § 1692(a): the alleged violations of 15 U.S.C. §§ 1692e, 1692e(3), and 1692e(10) found in Paragraph 47 of the complaint. [Doc. 1, ¶ 47].

**SO ORDERED**, this 19th day of November, 2026.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**